I would like to ask the court if I could have a minute and a half reserved for rebuttal. Yes. I guess so. Thank you very much. On this matter, which involves a personal injury negligence matter, was disposed of by the lower court by summary judgment, which we believe was inappropriate for several factors. The most important factor is that, in a sense, it is a negligence case on the premise liability toward things. These cases generally go to a jury to make determinations of facts that are disputed, as they are on this case. This case involves, I think we've all seen what's referred to as PLB's positive limiting barriers, which are around self-serving gas station pumps. Ms. Potvin was going there with her boyfriend and ended up looking for a squeegee to clean up her windshield, and her right foot got caught on one of these things and fell and got severely injured. The judge in the lower court made rulings saying that it was an open and obvious dangerous condition, which we think that is an issue that is reserved by the trier of fact by a jury as to whether or not a person of average intelligence would recognize that as being an open, obvious, and dangerous condition. I thought that, in essence, you had conceded in your pleadings that the danger was open and obvious, and then the question is what proceeds from that. I'm glad you brought that up, Your Honor. What I conceded, because the question was basically, is that condition open and obvious? Obviously, anything that you see, without being covered over, is open and obvious, but that's not what the law requires. We never conceded that it was open and obvious in a dangerous condition. If you would ask the average person who goes to these pumps all the time, do you see those things, the answer would be absolutely yes. Do you consider them dangerous? No. However, the defendant had actual knowledge that these were dangerous by two prior occurrences, that people getting their feet caught. As I understood it, the trier said there may have been two prior occurrences, but you didn't show that they were anything like this situation here. There wasn't sufficient showing of similarity to be relevant to my decision. I respectfully disagree with that, because that's in the appendix. Those are incident reports prepared. I'm talking about the ruling. Am I correct about what the trial judge ruled? That's what she said, yes. They are incident reports, but they're incident reports that occurred at other locations. All PLBs are not created equal. Your own expert said that. But all PLBs have to have the general similarity. But general similarity, that doesn't seem to me to cut it. Well, at least it puts them on notice. And I think here the whole thing is, are these PLBs a dangerous condition? Which, again, as I say, is something which a jury decides, hearing the facts, hearing the evidence. You cannot determine that as a matter of law, saying it's open. And the lower court determined that it was open, obvious, and dangerous, which we're saying it was open and obvious because anyone can see it. But the known appreciation of danger was not there, because the average person of average intelligence would not consider walking into a gas station to pump gas, and you walk over these things, which is customary with what you do, would be a dangerous condition. However, someone who has knowledge of things happening there will concede that, and that would be a question of fact. And then further, what we contend to... You know, I just struggle with the notion of whether you're adding an element to the test. I always thought that if you prove that a condition is open and obvious, that that carries with it the indication that obvious means that the person of average intelligence would appreciate the danger. If you prove that there is a clearly visible large pit on the property, you don't also have to prove that someone realizes that falling into a pit is a bad thing. I agree. You may be able to prove that the landowner should have put warnings up because of the nature of the open and obvious condition, or you may be able to prove the duty to remedy, or to somehow safeguard that open and obvious condition. I question whether you have to prove any more than that. Well, Your Honor, the point you bring up, let's carry it a step further. If you have a pit that's ten feet deep, and it's open and obvious, obviously it's dangerous, and the average person of reasonable intelligence would determine it's dangerous. If you have a slight depression, let's say, or a slight groove, that's three quarters of an inch deep, I think people of different minds would vary as to whether or not that's a dangerous condition. And that's where a jury comes in, hearing all the facts and all the evidence. And that should be a question of fact or a jury determination, and not disposed of by summary judgment. And then, I'm going to go, I'm sorry, Your Honor. I didn't say anything. And secondly, if there is an open and obvious dangerous condition, on which negates the duty to warn, then under Massachusetts law, there is a duty to remedy. A landowner cannot just recognize a condition to be open, obvious, and dangerous, and leave it, knowing that people are going to proceed on this property, irrespective to do whatever they're going to do. You made an attempt to argue duty to remedy in the district court. I understand the defendant says that you've waived the point. Well, let's assume that you didn't, all right? But you never suggested, made any proffer to the district court, as to how the landowner could have remedied this. This is not something that was put there for decorative purposes or because it was some architect's dream. This is a feature of the landscape that's required by state law. Correct. But on the duty to remedy, is it a duty to take affirmative action to somehow? Yes, but no, no. The plaintiff has to show that there is a feasible means of remedying that. Right. In order to breach the duty of remedy. I think that I've read every material word in the record on this, and I couldn't find anything that showed how you propose to remedy this defect, this alleged defect. I would, and this is in the record, on the state fire marshal was deposed, and the question was asked, could these areas of the PVCs be painted a bright color, red or yellow, to alert people concerning this PVC? That's a failure to warn. That's not a remedy. It doesn't need a warning. But it reduces the risk. It reduces the risk of injury by making a person aware of the danger. And all these things really are questions of fact for a jury determination. How is it a jury determination, even if we assume you preserved duty to remedy argument, which was hardly fleshed out in the district court, to say that something they're required to have by law raises a fact question about remedying it? Well, it's required by law. The fact that something is required by law, if it poses a known risk to the landowner, the landowner knows that something can't be done. Where's the remedy? You didn't make any offer to the trial judge. You didn't call her attention to this entire theory. In the report of Mr. Frederickson, it's mentioned about painting or putting signs. So painting? Painting. Bright colors. Cautionary painting. Cautionary signs as persons approach the pump area. Just like when you're driving on the road many times and they're doing road work and there's grooves on the road, you'll see signs. Is that the expert in the district court said that she could not make findings that would allow the admissibility of that report under Rule 702? Well, that's what I'm saying. But he'd be testifying as to factual findings as far as the depth of the grooves, the width, and knowing people would come on there with heels and shoes of different things of that magnitude, which is due to common experience. Thank you. Thank you. Mr. Donnelly, good morning. Good morning. Please, the court. Could I help you and help me talk a little bit? Could you look at these two exhibits, which the photographs, Exhibit 2 and Exhibit 6, I believe they are. Yes, sir. I believe they show those grooves. Yes, sir. Are those the exhibits that the court used in concluding that this was a dangerous situation? I don't think the court concluded that it was dangerous. Well, it concluded it was obvious and I believe dangerous otherwise. Well, yes, while they're here. But those photos, in fact, Exhibit 6 was from the plaintiff's actual deposition, and the marks you see on it are marks that she made in terms of her testimony. So, yes, I mean, those photographs clearly show the contrast of the PDAs. They show what is claimed to be obviously dangerous. Right, and even that oral argument, Mr. Momolo, at the summary judgment hearing, readily agreed that it was clearly visible to everyone. Well, I'm not asking about visibility. It's obviously visible. I'm asking how you can conclude from looking at these photographs that these grooves are dangerous. I don't think they're dangerous, Your Honor, and I think that our position is that they don't present a danger. But let's go back to the facts of what happened here. The plaintiff says that she got out of the car, she walked forward to look for a squeegee, and when she couldn't find one for whatever reason that we don't understand, she decided to walk backwards. And she doesn't really know what caught her foot, but she believes, quote-unquote, that it was one of these grooves that caused her to walk. I'm afraid I may have misled you because I misstated my question. I'm sorry? My question is how can you conclude whether they are dangerous or not from the photographs of what you would see? Right, I don't, I don't. Well, you need something more, and isn't that a fact that has to be followed by a jury? No, Your Honor, because I think it's plain that these don't present any kind of danger. They're plainly visible. They're required by law. We don't have any choice whether to install them or not. As it was said before, this is not some kind of architectural nicety. This is required and is in place so that if there is a spill, the HALON system in the station can control it. There's not an explosion. There's not... I don't understand why they're there. Right. I just don't understand how this can be decided by summary judgment. Well, it can be decided by summary judgment, Your Honor, because while it's open and obvious, the condition, the court basically has agreed with that. Everyone has agreed with that. There's no claim in our claim, you know, as we said in our brief, that we don't think that this even represents a danger. And the judge below, I think, in her order said that, well, I guess I'll just assume that it represents a danger for the purpose of the analysis. So then she went to O'Sullivan v. Shea, which says if it's an open and obvious condition and it presents a danger and it's open and obvious to a person of average intelligence, and Mr. Mungau agrees it was clearly visible, then that case would apply. And that case, of course, was the case decided by the SJC about a plaintiff diving into the shallow end of an above-ground pool. And that was deemed to be an open and obvious condition, and there was no recovery in that case. So, Your Honor, that's the same situation that we have here, basically. The only difference, I would say, is I don't think that the plaintiff... on summary judgment to bring forward the facts to say that this is a dangerous condition. Merely because an accident happened here doesn't make it a dangerous condition. So there is a lack of evidence, which is the plaintiff's burden, of course, on summary judgment to bring forward facts and information under oath on each and every element of the claim, and that he failed to do. And that is what the judge ultimately said was the problem in the case. That from her perspective, the only theory that had been advanced was Owain's theory. And the element here is that Owain wouldn't have made any difference to a person who would like to walk backwards in that fashion. So I think that if you look at the case, that's why it is one that is right for summary judgment. There were no disputes of fact. The lines are there. The grooves, I guess we would better call them. And they're required by Massachusetts state law. And my client followed the law and has them in all of these gas stations and so does every other self-service gas station in the Commonwealth. So I don't know if I've still addressed your question or not. Well, you did. Thank you. You're welcome. So, you know, I think a quote actually from Judge Selya from the Gomez case that he wrote in 2012 is applicable here. And at page 398, that's by 670F Woodard, it says, Because a rational jury could not find that a dangerous condition existed at the time and place of the plaintiff's fall, the lower court appropriately jettisoned the claim. And that's what happened here. The lower court jettisoned the claim because the only theory advanced was a failure to warn. And the judge said that the condition was open and obvious. Put aside whether it's dangerous or not, it's certainly open and obvious. And a person of average intelligence was ready, willing, and able to see it. So this is O'Sullivan v. Shea. And in that situation, summary judgment is appropriate. I don't know if the court wants to hear anything in regard to the other argument that the appellant raised in the brief relating to the name change. I still kind of scratched my head on that one. The undisputed information was given to the lower court judge as to the evolution of Hess to Speedway. It's uncontested. It's in the record. So Speedway was correctly substituted as the correct defendant. Even if it wasn't, it's hard to see any prejudice. Right. So I do think it's a fairly simple case. I'm also willing to address, if the court wants to hear, the issue that I don't think the duty to remedy was ever raised below. But even if you put that procedural argument to the side and you say, what about the duty to remedy here? Well, the cases that involve duty to remedy are completely unlike this case. In all of those cases, there is a danger, an issue that's clearly presented, which isn't involved in this case. For example, in the Dos Santos case, the Dos Santos case was also a pool case, but it was a hugely different pool case. And here's why. There was a trampoline that was placed next to basically an inflatable-type above-ground kiddie pool, and people were being encouraged to bounce off the trampoline into the pool. And the owner was aware of this, and, in fact, I believe had made the pool and the trampoline available to the people who were renting the house. And so the owner readily knew and understood that this was a dangerous situation, but his answer was, well, we just wanted the people to have fun. So compare that to my client in this case. Speedway is required by law to put these grooves where they are, and it's required to have the preapproval of the state fire marshal to put it in this way before it can even open its door. So when you look at the cases that involve duty to remedy, they are not even vaguely in the same plane as the case involving my client. You're comparing a structure on the property that is there to really prevent people from being badly burned or hurt from a spill of fuel that could potentially ignite. You're trying to compare that to someone who thinks putting a trampoline next to an inflatable kiddie pool for people to jump into the kiddie pool is a fun thing. Well, clearly, there are two very different things here. And so I don't think that even if you get past the procedural argument whether duty to remedy was correctly raised, that the duty to remedy would be applicable on this record. I don't think it would. And I know there are other cases that this court has decided, Judge Lynch and Cracciolo, where we talked about duty to remedy at length. And that case is so diametrically different from this case, I don't know how to explain it other than, you know, In that case, the landowners knew that the seamen were, you know, cutting through the opening in the fence in the other location. They knew that there were two routes for the seamen to take, the safe route and the long route, or the short route, and the very dangerous route, which involved, you know, climbing over this breakwater and this setup that was extremely dangerous. And what happened in that case? Of course, the plaintiff fell into the water and tragically drowned. So, again, if you pick up those facts and compare them to this record you have here, this is not a duty to remedy case. So, no other questions? Thank you. Thank you. Just briefly, from the arguments here, these are factual, there's factual issues here, and I think that goes beyond the parameters of a Rule 56 motion in a negligence case. And I think juries can reasonably disagree as to whether or not those groups are in an open and obvious dangerous condition. Some jurors may say yes, some say no. If they say no, it's not open and obvious and dangerous, then, you know, there could be that condition requiring a duty to warn, apart from any possible duty to remedy. So I really believe this is a case, like a typical negligence case, especially on a premise liability case, that it's a case for factual determination to a juror rather than making these factual findings as a matter of law. Thank you very much. Thank you.